UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

Eastern District of Kentucky
FILED
AUG 05 2005
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 04-481-GWU

STEPHANIE POE, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 CFR 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 CFR 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to

1

>    Step 4. If no, the claimant is not disabled. See 20 CFR 404.1520(c), 404.1521, 416.920(c), 461.921.
>
> 4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 CFR 404.920(d), 416.920(d).
>
> 5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 CFR 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).
>
> 6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 CFR 404.1520(e), 416.920(e).
>
> 7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 CFR 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial

2

Poe

evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 CFR Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford

or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 CFR 416.965(a) and 20 CFR 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 CFR Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent

Poe

lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities. 20 CFR 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 CFR 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 CFR Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony

only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments. Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Stephanie Poe, was found by an Administrative Law Judge (ALJ) to have a "severe" impairment as a result of discogenic and degenerative disorders of the back. (Tr. 15). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 17-21). The Appeals Council declined to review, and this action followed. At the administrative hearing, the ALJ had asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were limited to "light" level exertion, and also had the following non-exertional impairments. (Tr. 46). She: (1) would need the option of sitting or standing every 15 to 30 minutes; and (2) could occasionally climb, bend, crouch, and crawl. (Id.). The VE responded that there were jobs that such a person could perform, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 46-7).

On appeal, this Court must determine whether the hypothetical factors selected by the ALJ are supported by substantial evidence, and that they fairly depicted the plaintiff's condition.

Poe

The plaintiff alleged disability due to a degenerative arthritic condition of the lumbar spine. (Tr. 84). She testified that she had to change positions every 10 to 15 minutes, and had trouble sleeping on her back due to numbness. (Tr. 39-41).

Medical records in the transcript include records prior to the plaintiff's alleged onset date in January, 2000, showing that she had been temporarily taken off work in March, 1996 due to lower back pain. (Tr. 143-4). Office notes from the plaintiff's treating family physician, Dr. Truman Perry, are difficult to read, but do indicate that she complained of lower back pain on her first visit in January 13, 2000. (Tr. 193). By February, however, she indicated that her back pain was better, and had discontinued physical therapy. (Tr. 192). She continued to complain of back pain during the year, although she was also pregnant at the time. (Tr. 190-1). After further complaints of back pain "off and on," Dr. Perry referred Mrs. Poe to a neurosurgeon, Dr. William Brooks, and obtained an MRI of the lumbar spine. (Tr. 186-7). The MRI showed bulging discs at the L3-L4 and L4-L5 levels, with indentation of the thecal sac and encroachment of the neural foramen. (Tr. 194).

Dr. Brooks examined Mrs. Poe on February 18, 2002. (Tr. 175). The plaintiff stated that, although she had been unable to work for two years, her condition was gradually worsening. (Id.). Dr. Brooks found a marked limitation in range of motion and "hypoactive" deep tendon reflexes, although her lower extremity strength was good. (Id.). He described the MRI results as "quite disturbing," noting that the two discs at L3-L4 and L4-L5 were "markedly" degenerative and associated with

8

evidence of segmental instability. (Id.). Dr. Brooks stated that there was no good solution for this abnormality, which appeared to be genetic, although surgery might be required in the future. (Id.). He stated that the plaintiff would have permanent restrictions of lifting no weight, doing no repetitive bending, stooping, climbing, crawling, squatting, or balancing, and avoiding sitting or standing more than 15 to 20 minutes at one time. (Tr. 176). He added that she was clearly incapable of working more than two to four hours at one time. (Id.).

State agency physicians who reviewed the record at this point concluded that, on the contrary, the plaintiff could perform light level lifting, with occasional climbing of ladders, ropes, and scaffolds, stooping, kneeling, crouching, and crawling. (Tr. 196-214). Nothing was said about balancing. One of the physicians, Dr. Kenneth Phillips, stated that he discounted Dr. Brooks' restrictions because they were not consistent with the overall evidence, but did not detail any specific inconsistencies. (Tr. 203-4).

Subsequently, on August 29, 2002, Mrs. Poe followed up with Dr. Brooks, who reported that she was continuing to worsen symptomatically and, he added, objectively. (Tr. 174). Her range of motion was "much less." (Id.). Dr. Brooks reiterated that spinal fusion might be required sometime in the future and, in his view, Mrs. Poe remained "totally disabled," and he did not think "there is much she's going to be able to do, because of severe degeneration which obviously is progressive." (Id.).

A few days later, on September 3, 2003, Mrs. Poe underwent a consultative physical examination by Dr. Jules Barefoot. No diagnostic studies were requested and, although Dr. Barefoot had access to records from Dr. Brooks and Dr. Perry which would have included the MRI report, he did not comment directly on the results other than to state that the plaintiff had an MRI and "no operative procedure was recommended." (Tr. 232, 237). His examination showed no motor, sensory, or reflex deficits, but forward flexion of the lumbar spine was limited to 45 degrees and squatting ability was described as poor. (Tr. 232-3). Mrs. Poe had a normal gait and ambulated without the use of an assistive device. (Tr. 233). Dr. Barefoot's impression was of degenerative disc disease of the lumbar spine, and in his opinion the plaintiff's ability to repetitively bend, squat, crawl, and climb appeared to be impaired, but he felt that she was able to sit, stand, move about, lift, carry, and handle objects. (Id.). He prepared a physical residual functional capacity assessment indicating that the plaintiff could lift up to 100 pounds occasionally and 20 pounds frequently, and that she could occasionally bend, squat, crawl, climb, and reach above shoulder level. (Tr. 236). No other restrictions are given.

Dr. Perry, in addition to submitting additional office notes which indicate that the plaintiff was taking three Lorcet tablets a day to control her pain but still woke up in the middle of the night because of pain (Tr. 240), testified in a deposition given on January 13, 2004 that he treated the plaintiff regularly between January, 2000, and January, 2004. (Tr. 252, 254-5). He described her primary diagnosis as lower back

10

pain with multiple herniated discs and segmental instability, and stated that she also suffered from depression secondary to lower back pain. (Tr. 255). He felt that the herniated discs pressing on the nerve roots were giving the plaintiff constant pain, and that there was no job that she would be able to tolerate. (Tr. 261). In his opinion, she would never be able to lift any weight; sitting, standing, and walking would be limited to one hour a day each with rests; she would be unable to use foot controls, and she would have a total restriction on working around unprotected heights, and moving machinery, and around marked changes in temperature and humidity. (Tr. 265). She would also have a moderate restriction on using automotive equipment and exposure to dust, fumes, and gases. (Id.).

The ALJ rejected the opinions of Dr. Brooks and Dr. Perry because she felt they were not supported by sufficient objective findings, because the plaintiff had not been referred for other treatments, such as injections or pain management, and because she felt that the daily activities described by the plaintiff were inconsistent with not being able to lift. (Tr. 15-17). The ALJ opined that there was no evidence "probative to a finding of disability based on any physiological disorder," and that all of the examinations "have been relatively unremarkable with no documentation of any musculoskeletal abnormality which could reasonably be expected to result in the degree of pain alleged." (Tr. 17). The ALJ felt that statements by the plaintiff that she looked after her 18-month-old daughter, and that her level of functioning had not changed because of her back impairment, was evidence that she was not as limited

11

Poe

as she alleged. (Id.). However, a review of what the plaintiff actually wrote in an Activities of Daily Living questionnaire was that she looked after her 18-month-old daughter every day, but that "my husband bathes her and does any lifting concerning her" and there had been no change in her responsibility from previously "because my husband has always done the lifting and bending where our daughter is concerned." (Tr. 107). She added that when she was in severe pain she would lie down and her husband would do all the looking after. (Id.).

Since this is a case where two treating sources found greater restrictions than a consultative examiner and a reviewer, it is particularly important that the reviewing sources have had access to all the evidence and clearly explain the reasons for their difference of opinion. Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). As previously noted, neither Dr. Barefoot nor the state agency reviewers provided any clear explanation of why, in their view, the plaintiff's MRI results were less serious than found by Dr. Brooks, a neurosurgeon. It is not even clear from Dr. Barefoot's evidence that he reviewed the MRI before writing his report. Nor did Dr. Barefoot or the reviewers comment on the balancing restrictions listed by the treating sources. Social Security Ruling (SSR) 85-15 indicates that some balancing is required in almost all daily activities, is required more in some jobs than others, and "may be critical in some occupations." SSR 85-15, p. 6.

While the Commissioner argues that it is the ALJ's responsibility to weigh the evidence, the ALJ simply does not have the expertise to make a determination that

12

Poe

there was "no documentation of any musculoskeletal abnormality which could reasonably be expected to result in the degree of pain alleged" in the face of two medical opinions to the contrary which have not been properly addressed by state agency physicians or consultants.

However, the ALJ does correctly point out that some of Dr. Perry's office notes from after the alleged onset date indicate that the plaintiff's back pain was not at a continuously disabling level for the entire period alleged. (E.g., Tr. 186). An award of benefits from the alleged onset date in January, 2000, therefore, is not clearly warranted.

Therefore, a remand will be required in order to obtain medical expert testimony regarding a logical onset date.

The decision will be remanded for further consideration.

This the 5 day of August, 2005.

*[signature]*
G. WIX UNTHANK
SENIOR JUDGE